Don POOLEY, Plaintiff,

v.

NATIONAL HOLE–IN–ONE
ASSOCIATION,
Defendant.

No. Civ 99–238 TUC ACM.

United States District Court,
D. Arizona.

Feb. 22, 2000.

John C. Gemmill, Teilborg, Sanders & Parks, P.C., Phoenix, AZ, for National Hole In One Association, defendant.

## ORDER

MARQUEZ, Senior District Judge.

Plaintiff Don Pooley ("Plaintiff") is a professional golfer who made a "hole-in-one" for $1,000,000 at the 1986 Bay Hill Classic golf tournament. Defendant National Hole–in–One Association ("Defendant") produced a videotape of the hole-in-one for a promotion and used Plaintiff's name in the videotape footage. Plaintiff alleges that Defendant used the videotape footage without Plaintiff's consent and sues the Defendant for invading his right of publicity.

Pending before the Court are Defendant's Motion to Dismiss and Plaintiff's Motion to Dismiss the Claim of the Non–Parties at Fault. For reasons which follow, the Court denies Defendant's Motion and grants Plaintiff's Motion.

### I. *Defendant's Motion to Dismiss*

Defendants move for judgment on the pleadings under Federal Rule Civil Procedure 12(c) and to dismiss the action for failure to state a claim under Rule 12b(6). In deciding a motion to dismiss, a court accepts as true all allegations of material fact in the complaint and construes them in the light most favorable to the nonmoving party. A court will not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.1994). The standard for determining whether to grant a motion for judgment on the pleadings under Rule 12(c) is the same as that governing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994).

David C. Bury, Bury, Moeller, Humphrey & O'Meara, Tucson, AZ, for Don Pooley, plaintiff.

## A. *Matters Outside of the Pleadings*

Typically, if matters outside of the pleadings are submitted, a motion to dismiss is treated as one for summary judgment. *Del Monte Dunes at Monterey, Ltd. v. Monterey,* 920 F.2d 1496, 1507 (9th Cir.1990). Here, both parties submit materials that go beyond the Complaint. Plaintiff attaches the entirety of his deposition testimony, as well as Defendant's discovery responses. Defendant asks the Court to take judicial notice of the videotape footage that is at issue in this lawsuit.

The Court will not consider the extra-pleading material submitted by the Plaintiff. The Court will consider only the factual allegations set out in the Complaint and will treat the present Motion as one to dismiss and not as a motion for summary judgment. The Court will, however, consider the contents of the videotape submitted by the Defendant in ruling on the present Motion. *See Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994), *cert. denied* 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994) (documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss).

## B. *Relevant Facts*

Plaintiff Don Pooley ("Plaintiff") is a professional golfer with a well known and established name and reputation on the PGA Tour. (Complaint, CIV 99–238,[1] ¶ IV.) Defendant is engaged in marketing and selling its products in conjunction with a fund raising promotion known as the "Million Dollar Hole–in–One." (Complaint ¶ V.) As part of its marketing, Defendant produced a videotape containing footage of the Plaintiff making a hole-in-one on March 15, 1986. (*Id.* at ¶ VI.) Without Plaintiff's consent, Defendant used the videotape footage to promote its business. (*Id.* at ¶ VII.) Defendant gained a pecuni-

ary benefit from the use of the videotape. (*Id.* at ¶ VIII.)

The videotape is eight-minutes in length and starts by describing how the Million Dollar Hole–In–One Shootout works:

Dynamic, challenging, exhilarating. The hole-in-one, every golfer's dream. The most dramatic shot in all of golf ... We've pioneered a new product—the Million Dollar Hole–In–One Shootout. It's the ideal fundraiser for any type of charity. Let us put it to work for you ... Major corporations such as Oldsmobile, American Airlines ... have all used our services ... Traditionally, the newer events can raise up to $30,000, however, the more mature, well-managed events can raise up to $50,000. That's a lot of money but we have the track record to back it up ... The National Hole–in–One Association is the only entity in America that can provide tournament insurance, promotion, and execution ... It's gotta be a vehicle to sell or you have nothing and that's what it is for us and that's why its so exciting ... You advertise a million dollars and it turns some heads. It's different than any other tournament in the Phoenix area. Most of them have car give-aways ... This is the only one that has a million dollars and gives them an opportunity to shoot for that million dollars. We pay the premium and if somebody puts it in the can, its the insurance companies ball game ... This is a win-win situation. The sponsors get tremendous media coverage and we raise a lot of money for the charities.

Videotape: $1,000,00 Shootout, a Proven Fundraiser (National Hole–in–One Association 1992) (Defendant's Exhibit 1).

While simultaneously showing a two-second clip of Plaintiff teeing off at the Bay Hill Classic followed by a four-second clip of him walking up the fairway after mak-

---

1. This case was originally filed in Pima County Superior Court under Complaint No. 331991. Based on diversity jurisdiction, the case was removed to Federal District Court on May 7, 1999.

ing a hole-in-one, the voice on the video-tape asks:

> Has anyone ever made a million dollar hole-in-one? You bet. At the 1986 Bay Hill Classic, Don Pooley electrified a national television audience as he knocked this ball in on the fly for a million dollar ace. Pooley received half the prize and the other half went to the Arnold Palmer's Children Hospital Charity. And in 1991, an amateur named Ray Wilkerson made the shot of a lifetime and generated national exposure for the title sponsor and charity
> . . .

*Id.*

### C. Right of Publicity

■ The common law right of privacy provides protection against four distinct categories of invasion: (1) intrusion upon a plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about a plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. *Eastwood v. Superior Court,* 149 Cal.App.3d 409, 198 Cal.Rptr. 342, 346 (1983). The fourth category is commonly referred to as appropriation (*id.*) or the right of publicity. Restatement (Third) of Unfair Competition § 46.

■ Arizona has not recognized a claim for the right of publicity in common law or by statute. In absence of Arizona law to the contrary, courts follow the Restatement. *Aztlan Lodge No. 1, Free and Accepted Masons of Prescott v. Ruffner,* 155 Ariz. 163, 745 P.2d 611, 613 (App.1987).

The Restatement (Second) of Torts § 652 C defines the claim as follows: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." The Restatement (Third) of Unfair Competition sets out the claim independently from general tort liability. See W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 130, at 1013 (5th ed. 1984) ("The topic [unfair competition] is

now a field in itself, and the subject so large and specialized that the American Law Institute has concluded that it is a separate field, to be excluded from the Restatement of Torts altogether.").

Section 46 of the Restatement (Third) of Unfair Competition defines the claim of right of publicity as follows: "One who appropriates the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for purposes of trade is subject to liability for the relief appropriate under the rules stated in §§ 48 and 49 [injunctive and damage relief, respectively]."

The right of publicity exists in some form in twenty-seven states. Laura Lee Stapleton & Matt McMurphy, *The Professional Athlete's Right of Publicity,* 10 Marq. Sports L.J. 23, 31, 64 (1999). In *California,* to prevail on a cause of action for common law misappropriation of plaintiff's name or likeness, a plaintiff must establish: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to the defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. *Eastwood,* 198 Cal.Rptr. at 346.

In *New Jersey,* the right of publicity generally applies to situations where the plaintiff's name, reputation or accomplishments are highly publicized and the defendant used that fact to his or her advantage. *Palmer v. Schonhorn Enterprises, Inc.,* 96 N.J.Super. 72, 232 A.2d 458, 461 (1967). *Palmer* cites the following instances where *New York* courts have found infringement: *Lane v. F.W. Woolworth Co.,* 171 Misc. 66, 11 N.Y.S.2d 199, 200 (N.Y.Sup.Ct.1939), *aff'd* 256 A.D. 1065, 12 N.Y.S.2d 352 (1939) (defendant sold lockets with removable photographs of plaintiff in each one); *Miller v. Madison Square Garden Corp.,* 176 Misc. 714, 28 N.Y.S.2d 811, 813 (N.Y.Sup.Ct.1941) (official program of sporting event contained photographs of contestants and prominent sports personalities); *Jansen v. Hilo*

*Packing Co.,* 202 Misc. 900, 118 N.Y.S.2d 162, 163 (N.Y.Sup.Ct.1952), *aff'd.* 282 A.D. 935, 125 N.Y.S.2d 648 (1952) (defendant inserted pictures of widely known baseball players in popcorn and chewing gum containers); *Selsman v. Universal Photo Books, Inc.,* 18 A.D.2d 151, 238 N.Y.S.2d 686, 687 (Sup.Ct.1963) (defendant inserted a picture of actress using a camera, with an inscription giving her name, in a manual for the camera). *Palmer,* 232 A.2d at 461.

It seems clear to this Court that a celebrity's interest in his name and likeness is unequaled and has been recognized as such by more than half the states in this country. The Court sees no reason why a claim for invasion of the right of publicity should not be recognized in Arizona. The Court applies the elements set forth in *Eastwood* (*infra* at pp. 1111–1112) and finds that the Plaintiff adequately stated a claim against the Defendant for violation of his right of publicity.

### D. *Incidental Use*

Defendant argues that even if the Court recognizes a cause of action for the tort of the right of publicity, its use of Plaintiff's hole-in-one is incidental and, therefore, cannot inure to its commercial advantage.

The Restatement (Third) of Unfair Competition § 47 states:

> The name, likeness, and other indicia of a person's identity are used "for purposes of trade" under the rule stated in § 46 if they are used in advertising the user's goods or services, or are placed on merchandise marketed by the user, or are used in connection with services rendered by the user. *However, use "for purposes of trade" does not ordinarily include the use of a person's identity* in news reporting, commentary, entertainment, works of fiction or nonfiction, or *in advertising that is incidental to such uses* (emphasis added).

The rationale for this rule is that an incidental use has no commercial value. *Schifano v. Greene County Greyhound Park, Inc.,* 624 So.2d 178, 181 (Ala.1993).

Whether the incidental use doctrine is applicable is determined by the role that the use plays with respect to the entire publication. *Ladany v. William Morrow & Co.,* 465 F.Supp. 870, 882 (S.D.N.Y.1978). A number of factors are relevant in this regard: (1) whether the use has a unique quality or value that would result in commercial profit to the defendant; (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication. *Aligo v. Time–Life Books, Inc.,* 1994 WL 715605, *2 (N.D.Cal.1994)

In *Staruski v. Continental Telephone Co. Of Vermont,* 154 Vt. 568, 581 A.2d 266, 269 (1990), an add featured plaintiff exclusively and falsely attributed defendant's advertising copy to her solely because of who she was. The court found that defendant's use was not incidental and that the plaintiff could recover for wrongful invasion of privacy. "The strategy ... was to obtain a commercial benefit—and, perhaps, also provide a public service announcement,—from the association of the ad's text with the names and photographs of select employees." *Compare Vinci v. American Can Co.,* 69 Ohio App.3d 727, 591 N.E.2d 793, 794 (1990) (An Ohio court applied the incidental use exception in a situation where the defendant used an Olympic athlete's name and likeness in the context of accurate, historical information on disposable drinking cups. Because the use was not meant to support or promote the cups, the court found it to be merely incidental.); *Aligo,* 1994 WL 715605 at *2 (A California court found that defendant's fleeting four-second use of plaintiff's picture in the 24–minute infomercial was incidental. It was only one of dozens of Rolling Stone covers used in the program and was insignificant to the commercial purpose of selling the music anthology.).

Here, Defendants are correct that the duration of the videotape footage of the Plaintiff's teeing-off and walking up

the fairway, which lasted a total of only six-seconds, is relatively short in relation to the rest of the publication, which is eight minutes in length. There is nothing, however, insignificant about the use of Plaintiff's name and footage in the videotape. His name, while only briefly mentioned, prominently stands out as the highlight of Defendant's advertisement.

Defendant, who is in the business of selling hole-in-one competitions for profit, describes itself as a fundraiser unlike any other in the Phoenix area because it gives contestants a chance to win, not a car, but a million dollars! A prize like that literally "turns some heads." The first six-minutes of the videotape promotes Defendant's Million Dollar Hole–In–One Shootout as "a proven fundraiser." [2] Defendant then puts its money where its mouth is by asking, "[h]as anyone ever made a million dollar hole-in-one? You bet. At the 1986 Bay Hill Classic, Don Pooley electrified a national television audience as he knocked this ball in on the fly for a million dollar ace . . ."

Had Defendant's videotape not included the name and footage of a person who made a million dollars for a hole-in-one, it's "Million Dollar Hole–in–One Shootout" would not have been very attractive to many golfers. Nor would it have inspired the motivation necessary for the sponsors to purchase Defendant's competition. The use of Plaintiff's name and videotape footage was *crucial* to Defendant's commercial purpose of selling its fundraiser.

The Court disagrees with Defendant's contention that "[a]ny golfer making a hole-in-one would have been sufficient in the video." (Defendant's Motion at 10:10.) Plaintiff's hole-in-one was not fungible to that of any other golfer, not even Ray Wilkinson. Contrary to Defendant's position (Defendant's Motion at 10:11–13), the voice on the videotape does *not* state that Ray Wilkerson, like the Plaintiff, won a million dollars for his hole-in-one. It states only that in 1991, "he made the shot of a lifetime and generated national expo-

sure for the title sponsor and charity." The uniqueness of Plaintiff's hole-in-one is that he *did* win a million dollars when he "put it in the can." Indeed, Plaintiff was specifically selected because of his distinction and his wide market appeal.

The Court finds that Defendant's inclusion of Plaintiff's name and hole-in-one for a million dollar ace was integral to Defendant's advertisement and clearly enhanced the marketability of Defendant's service. The incidental use doctrine does not apply.

### E. *First Amendment*

Defendant also contends that the First Amendment bars Plaintiff's action. It argues that the videotape footage reports only a historical fact that occurred in public at a golf tournament broadcast to a national television audience.

Generally, unauthorized use of a person's identity falls within one of two categories—"communicative" or "commercial." See Stapleton & McMurphy, *supra*, at 42. In communicative use, the policy of free speech wins over the right of publicity; it is entitled to the highest level of First Amendment protection. *Id.* at 42, 47. In commercial use, the right of publicity generally wins because, while, there are overtones of ideas being communicated, the use is primarily commercial. *Id.* While commercial use is not afforded the same level of protection as fully protected communicative speech, courts have not yet developed a test to balance the rights of publicity against commercial free speech. *Id.* at 50.

Notwithstanding the lack of an analytical model, it is evident to this Court that when the purpose of using a person's identity is strictly to advertise a product or a service, as it is here, the use is *not* protected by the First Amendment. *Dittmar v. Joe Dickerson & Assoc., LLC,* 1999 WL 1243312, *1, —— P.2d —— (Col.App. 1999). *See also Palmer,* 96 N.J.Super. 72, 232 A.2d 458, 461 ("[A]lthough the publication of the biographical data of a well

---

**2.** In fact, the title of the videotape is, "$11,- 000,000 Shootout, a *Proven Fundraiser.*"

known figure does not per se constitute an invasion of privacy, the use of that same data for the purpose of capitalizing upon the name by using it in connection with a commercial project other than the dissemination of news or articles or biographies does."); *Ainsworth v. Century Supply Co.,* 295 Ill.App.3d 644, 230 Ill.Dec. 381, 693 N.E.2d 510, 513 (1998) (A tile installer was consulted to appear in an instructional videotape but not in a subsequent television commercial. The court held that the defendant's use was not incidental to the later transmission of the news information; it was "central" to defendant's endeavor of advertising.); *Compare Page v. Something Weird Video,* 960 F.Supp. 1438, 1444 (C.D.Cal.1996) ("The First Amendment protection of newspapers and magazines ... extends to protect [defendant's] use of [plaintiff's] image to advertise their entire line of video products so long as they did not falsely claim that [plaintiff] endorsed [defendant]."); *Montana v. San Jose Mercury News, Inc.,* 34 Cal.App.4th 790, 40 Cal.Rptr.2d 639, 642 (1995) (A newspaper has a right to promote itself by reproducing its own news stories. "Constitutional protection extends to the truthful use of a public figure's name and likeness in advertising which is merely an adjunct of the protected publication and promotes only the protected publication.").

 In this case, while Plaintiff's hole-in-one at the Bay Hill Classic was open to national observation and public videotaping, its *subsequent* unauthorized reproduction was not automatically privileged simply because the hole-in-one continued to be a "newsworthy" event. Defendant did not create the videotape in connection with a news account. Defendant did not include Plaintiff's name and videotape footage simply to communicate an idea. It capitalized on Plaintiff's name, reputation, and prestige in the context of an advertisement. The promotional videotape went one step further and implied a false connection between the Plaintiff and its business. The Court finds that the use of Plaintiff's identity was strictly commercial and not protected by the First Amendment.

## II. *Plaintiff's Motion to Dismiss the Claim of the Non–Parties at Fault*

Defendant acknowledges that a videotape was produced using Plaintiff's hole-in-one footage but alleges that it relied on outside companies to obtain the admittedly needed consent from the Plaintiff. Defendant filed a Notice of Non–Parties at Fault claiming that Holden Production Group, Mickey Holden, the PGA Tour, PGA Tour Productions, Scott Rinehart, and Craig Sharkey should share in the fault under Arizona's comparative fault statute. Plaintiff argues that this statute does not apply and asks that the claim of the Non–Parties at Fault be dismissed.

 In Arizona, the liability of tortfeasors is several and each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault. Ariz.Rev.Stat. § 12–2506(A) (West 2000). In assessing percentages of fault, a jury considers the blame of all persons regardless of whether the person was named as a party to the suit. *Id.* at § 12–2506(B) and (C).

 By it's very language, Arizona's comparative fault statute is restricted to certain types of cases where fault is an element of the action. Section 12–2506(A) reads:

> In an action for *personal injury, property damage or wrongful death,* the liability of each defendant for damages is several only and is not joint, except as otherwise provided in this section. Each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of *fault,* and a separate judgment shall be entered against the defendant for that amount. To determine the amount of judgment to be entered against each defendant, the trier of fact shall multiply the total amount of damages recoverable by the plaintiff by the percentage of each defendant's *fault,* and that amount is the maximum recoverable against the defendant (emphasis added).

In assessing percentages of fault, the jury "shall consider the *fault* of all persons who contributed to the alleged *injury, death or damage to property* ..." *Id.* at § 12–2506(B) (emphasis added).

While the right of publicity is considered a "property right" (see Stapleton & McMurphy, *supra*, at 31), it does *not* include the element of fault. See discussion *infra*, pp. 1111–1112. The elements of the right of publicity include only the elements of validity and infringement. Stapleton & McMurphy, *supra*, at 31.

This view is supported by the commentary to the Restatement:

> Unless required by an applicable statutory provision, *an intent to infringe another's right of publicity is not an element of liability* ... Thus, the plaintiff is not required to prove that the defendant intended to identify the plaintiff. *Similarly, a mistake regarding the plaintiff's consent is not a defense.* Since liability for infringement of the right of publicity does not depend upon proof of falsity ... *the constitutional requirement of fault* imposed in defamation and false light privacy actions *is not applicable to the imposition of liability under this Section.* However, the intent and knowledge of the defendant remains relevant to the resolution of other issues ... (emphasis added).

Restatement (Third) of Unfair Competition § 46 cmt. e (1995). *See also Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 569, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) (the actual malice standard does not apply to the tort of appropriation of a right of publicity); *Fairfield v. American Photocopy Equipment Co.*, 138 Cal.App.2d 82, 291 P.2d 194, 196 (1955) ("The motives of a person charged ... are not material with respect to the determination of whether there is a right of action ... Inadvertence or mistake is no defense where the publication does in fact refer to the plaintiff in such a manner as to violate his right of privacy.").

Plaintiff's case is not a "fault" case of personal injury, property damage, or wrongful death. Plaintiff does not allege injury, death, or damage to property. He charges that Defendant appropriated the commercial value of his identity by using his name and videotape footage without his consent. Whether the Defendant mistakenly believed that Holden Production Group, Mickey Holden, the PGA Tour, PGA Tour Productions, Scott Rinehart, or Craig Sharkey had obtained Plaintiff's consent, is irrelevant. This Court cannot permit a jury to allocate blame when the elements for a prima facie case for violation of the right of publicity do *not* include fault or negligence in any degree.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Document 16) is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Request for Oral Argument (Document 16) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss the Claim of the Non–Parties at Fault (Document 15) is GRANTED.